UNITED STATES DISTRICT COURT =]0
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMY L. STEWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:20-cv-538-TFM-MU |
| | ) | |
| BUC-EE'S ALABAMA, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are *Buc-ee's Alabama LLC's Motion in Limine to Exclude Testimony from Wayne Sanders* (Doc. 88, filed 5/22/23) and *Defendant UniFirst's Motion to Exclude Testimony of Jack Denver* (Doc. 83, filed 5/04/23). Plaintiff timely filed his Responses with an Opposition to the Motion to Exclude Jack Denver (Doc. 94) and a Motion to Strike the Motion the to Exclude Wayne Sanders (Doc. 95). Defendants timely replied to the response and motion to strike. *See* Docs. 97, 100. The Court issued an order denying the motion to strike (Doc. 102) and ordered Plaintiff to respond in substance. Subsequently, Plaintiff filed his opposition to the Motion to Exclude Wayne Sanders. *See* Doc. 107. Defendants thereafter replied. *See* Docs. 108, 109. After a careful review of all the written pleadings, motions, responses, replies, and the relevant law, the Court finds Defendant Buc-ee's Motion to Exclude Wayne Sanders (Doc. 88) is **DENIED** and Defendant UniFirst's Motion to Exclude Jack Denver (Doc. 83) is **GRANTED**.

### I.    STANDARD OF REVIEW

The admission of expert testimony is governed by the Federal Rules of Evidence, which provide that, if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness "qualified as an expert by

knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise." FED. R. EVID. 702. The U.S. Supreme Court elucidated this requirement in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, noting that district courts are gatekeepers charged with ensuring that "speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002). In determining the admissibility of expert testimony under *Daubert,* the district court must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable*;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291-92 (11th Cir. 2005). "While there is inevitably some overlap among the basic requirements — qualification, reliability, and helpfulness — they remain distinct concepts and the courts must take care not to conflate them." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted).

The district court's objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The proponent of the expert testimony bears the burden of demonstrating that the expert is qualified to render his testimony, the methodology by which he reached his conclusions is sufficiently reliable, and his opinions will assist the trier of fact. *Id*.

If a witness' qualifications to render an opinion rest exclusively or primarily on experience, the witness "must explain *how* that experience leads to the conclusion reached, why that experience

is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. at 1261 (internal quotations and citation omitted) (emphasis in original). Reliability may not be premised "merely by the *ipse dixit* of an admittedly qualified expert." *Id*. When determining reliability, the district court may take into consideration a range of factors, including: (1) whether the expert's theory can be, and has been, tested; (2) whether the expert's theory has been subjected to peer review and publication; (3) whether the employed technique has a known error rate; and (4) whether the methodology is generally accepted in the scientific community. *Id*. at 1262; *McCorvey*, 298 F.3d at 1256. These factors, however, are non-exhaustive. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999). The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home,* 996 F.2d 266, 268 (11th Cir. 1993).

## II. DISCUSSION AND ANALYSIS

The Defendants have each filed a motion to exclude expert testimony from Plaintiff's witnesses. *See* Docs. 83, 88. The motions have been extensively briefed by the respective parties to each matter and the Court finds that oral argument is not needed on the matters.[1] Thus, the motions are ripe for review. The Court will discuss each motion to exclude in turn.

### A. Wayne Sanders (Doc. 88)

Defendant Buc-ee's Alabama, LLC ("Buc-ee's"), moved, pursuant to Federal Rule of Evidence 702, to exclude any testimony or evidence from Wayne Sanders ("Sanders"). Doc 88. Defendants first argue that Saunders testimony relies upon insufficient facts or data, and/or

---

[1] There is no requirement that a *Daubert* hearing always be held. *See. United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001). Whether a hearing is necessary is a decision within the discretion of the Court. *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005).

unreliable methodologies. *Id.* at 6. Next, they argue that his opinions are based upon "voluntary suggestions by various organizations who take no responsibility or liability for the application of their voluntary recommendations," and thus, are inadmissible. *Id.* at 3.[2]

With regard to admissibility of the Wayne Sander's opinion and testimony, there are three factors the Court must consider: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1183 (11th Cir. 2013). Plaintiff, as the party offering the testimony, must meet each prong by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. 579, 592 n. 10).

Here, the only prong that Buc-ee's disputes is factor 2: whether the methodology by which the expert reached his conclusion was sufficiently reliable. Sanders was retained by Plaintiff to give his expert opinions related to commercial industry standards for premises safety as it pertains to the flooring and mats at the store in which Plaintiff fell. Doc. 107 at 1. He has worked as a safety and security consultant in the hospitality industry for many years, currently employed full time with Extended Stay of America. Doc. 88-2 at 23. In support of his proffer of Sanders as an expert, Plaintiff notes (1) his thirty-five years of experience, education, and training related to premise safety, risk management, and forensic safety, (2) his affiliation with the American Hotel and Lodging Association, American Society of Safety Professionals, ANSI Sub-Committee Member,

---

[2] It must be noted that Defendant's did not assert that Mr. Sanders is not qualified, based on his general credentials or competency, precluding any discussion on the qualifications of Mr. Sanders.

Claims Litigation Management Alliance, International Association of Professional Security Consultants, Institute of WorkComp Professionals, and National Floor Safety Institute, and (3) his accreditation with the National Floor Safety Institute. *See.* Doc. 107-1 (CV of Wayne Sanders).

In contrast, Buc-ee's asserts that Sanders' opinions lack methodology because they are based upon insufficient data and are inadmissible because "none of Sanders' opinions are based on law, statute, regulations or standard." Doc. 88 at 3; *see also id.* at 8 ("None of Sanders' opinions are based on any facts, scientific methodology, or industry standards, guidelines, rules, laws, etc., thus his opine regarding the mat is irrelevant, misleading, and should be excluded."). Further, Buc-ee's argues that because Sanders' opinions are "based on voluntary suggestions by various organizations who take no responsibility or liability for the application of their voluntary recommendations" the data lacks merit. *Id.* In addition, Buc-ee's argues that since it is not a member of any of the organizations Sanders is affiliated with or accredited by, any opinion of Sanders based upon the methodology or data of a non-Buc-ee's affiliated organization, regardless of the validity of the organization, is irrelevant.

To support its position, Buc-ee's points to several factors that it believes illuminates the unreliability of Sanders' data and methodology. The first factor is the contradicting opinion of its expert, Jason Brunson, the manufacturer, and supplier of the mat. Mr. Brunson, unlike Sanders, opined that the mat in question met industry standards and was appropriate for the use it was intended. Doc. 88-3 at 4. Buc-ee's also notes that Sanders' opinion differs in some circumstances from that of Plaintiff's forensic architect, Neil Johnson. Doc 88 at 3.

This argument fails as a matter a law. Even when a trial court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable. Rule 702 is broad enough to permit testimony that is the product of competing

principles or methods in the same field of expertise. *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021)

Second, although Sanders personally inspected the location of Plaintiff's fall, including the tile Plaintiff tripped on; and, in addition, reviewed the tile spec sheets, photos of the mat and mat location at the time of the fall, the written discovery submitted by all parties, weather reports, ANSI standards, NFSI Standards, and both Defendants representatives deposition transcript, Buc-ee's argues that the facts relied upon by Sanders, in forming his expert opinion, are not reliable.[3] In regard to the tile, Buc-ee's asserts "the American National Standards Institute (ANSI) and the tile industry standard for tile is a coefficient of friction (DCOF) of greater than .42. Sanders opines that Buc-ee's should have had a tile with a DCOF of greater than .60," nonetheless, Buc-ee's fails to cite support for these propositions. *See.* Doc. 88 at 1-2. Similarly, Buc-ee's contends Sanders "has opined it could be greater than .6 or it could be .9 for all he knows", "Sanders's testimony as to the Buc-ee's tile is pure speculation." *Id.* at 2. A reading of the testimony, however, does not support this contention. In pertinent part:

> When asked by counsel about the DCOF of the tile on the premises " it could be .9 for all you know?" Sanders responded that the tile "could have been .3 on the day of the accident. It could be .9 today. I could've been .4 when you and I were there. It's gonna vary. And  that -- because of that variability that can occur. That's why you have secondary measures that you put in place to contemplate that variability's gonna occur based on weather, contaminants, cleanliness. That's why you use mats. And that's why you're use signs or cones. If you felt like that there was never gonna be at variability then you would never need mats.

Doc. 88-1 at 6 (deposition page 110). Taken in context, it is clear Sanders' "speculative" statements were meant to support Sanders's opinion on the proper safety protocol standards regarding the premises.

---

[3] *See* Doc. 107 (Exhibit 3 – Sanders Deposition Transcript – Inspection and Review of Materials Portion- page 48-54, 180-181); *see also* Doc. 107 (Exhibit 4 -- Sanders Expert Report).

Buc-ee's then argues "Sanders never inspected the mat," and "thus his [opinion] regarding the mat is irrelevant, misleading, and should be excluded." Doc. 88 at 8. This argument also fails as Rule 702 does not impose such a requirement. The Eleventh Circuit Court of Appeals has explicitly disclaimed a bright line rule that an expert witness is qualified to testify regarding the cause of an injury only if the expert has personally used the allegedly defective product. *Moore,* 995 F.3d at 855 (holding that requiring plaintiffs hire expert witnesses who are also clients, customers, or regular users of the defendant's product would set a burden that is much "too high.").

Finally, Buc-ee's argues that because it is not a member of any of the industry organizations in which Sanders's either relied on or is accredited by, "none of Sanders' opinions are based on any facts, scientific methodology, or industry standards, guidelines, rules, laws, etc." Doc. 88 at 8. "When determining the reliability of an expert's opinion, a trial court must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Curtis Inv. Co., LLC v. Comm'r*, 909 F.3d 1339, 1350 (11th Cir. 2018) (quoting *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004)). The admissibility of an expert is a case specific analysis and a court "should consider any factors that may advance its Rule 702 analysis." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *see also Rink*, 400 F.3d at 1292 (citations omitted) (noting the list of factors is not exhaustive, the factors are not a definitive checklist, and district courts have substantial discretion in deciding how to test an expert's reliability). "The rules relating to Daubert issues are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). A basic foundation for admissibility is that expert testimony is reliable if supported by appropriate validation, that is, "good grounds," based on what is

known. *Daubert*, 509 U.S. at 590.

"The rejection of expert testimony is the exception rather than the rule." *Moore,* 995 F.3d at 850 (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). Though it may be true that Sanders' opinions are not based on the same standards used by Buc-ee's or the manufacturer of the flooring and mats at issue, it does not mean that the information is not relevant to causation in the instant matter. The methodology relied upon by Sanders is not unreliable simply because it is a standard upon which Buc-ee's does not subscribe. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Here, the Court notes, first, that Buc-ee's fails to cite any specific evidence supporting its theory that the data, methodologies, certifications, industry ratings, etc. of the American Hotel and Lodging Association, American Society of Safety Professionals, ANSI Sub-Committee Member, Claims Litigation Management Alliance, International Association of Professional Security Consultants, Institute of WorkComp Professionals, and National Floor Safety Institute (all cited by Sanders in his expert report) were unreliable. The Court declines to scour the record or perform outside research for objectionable excerpts based on generalized descriptions. Accordingly, the Court finds Defendant's speculative objections to the reliability of Sander's data and methodology woefully insufficient.

Moreover, the Court finds that Sanders' opinions regarding the design of the flooring and mats are all clearly relevant and connected to the facts concerning the potential negligence of Buc-

ee's. Further, the Court finds that the crux of Buc-ee's argument against Sander's qualifications goes to the weight of evidence, which can be addressed during cross-examination and does not merit exclusion of his testimony. Accordingly, Buc-ee's Motion to Exclude (Doc. 83) is denied.

**B.     Jack Denver, Life Care Planning Expert Testimony (Doc. 83)**

UniFirst filed their motion to exclude testimony of expert witness Jack Denver, M.D. ("Dr. Denver") who is designated by Plaintiff Steward as his retained "life care planner." Doc. 83. When asked by counsel "what is the proper title for what you do?", Dr. Denver responded:

> Certified Physician life care planners. Essentially we're kind of viewed as the Navy Seals within the life care planning community, because our qualifications are robust with an MD degree and board certification in a relevant specialty that has specific training in orthopedics, neurology, as well as other disciplines that make up the discipline of physical medicine and rehabilitation, plus our experience in providing medical and rehabilitation care to individuals with disabilities and managing them over the long term basis.

Doc. 94-1 at 5 (deposition page 206).

Dr. Denver was hired by the Plaintiff for his expert analysis of the future medical care and monetary needs associated with those personal injuries claimed by Mr. Steward. Dr. Denver is board certified in physical medicine and rehabilitation. Doc. 61-11, at 2. He currently works for a "damages evaluation company," Physician Life Care Planning, which specializes in forecasting "future medical expenses." Doc. 83 at 1. In addition to being board certified in physical medicine and rehabilitation, pain medicine, and spinal cord medicine, Dr. Denver has had multiple directorships for both Lakeshore Hospital and Brookwood Medical center in Alabama along with holding a certification in physician life planning. Doc. 94 at 4.

UniFirst asserts that Dr. Denver's testimony is not based on reliable scientific methodology. In rebuttal, Plaintiffs argue that Dr. Denver has prepared between one-hundred (100) and two hundred (200) life care plans and has testified as an expert for such plans for both

plaintiffs and defendants never being prevented from testifying as an expert witness concerning "life care plans." Doc. 94 at 5. Dr. Denver testified that Life Care Plans are a well-accepted in the medical industry, and that he is always objective in his presentations whether he is testifying for a plaintiff or defendant. Further, he noted that the life care plan is to objectively evaluate an individual's condition and residual medical condition and to quantify future medical needs using the methods and best practices of the American Academy of Physician Life Care Planners. Doc 94-1 at 7.

UniFirst countered that even if Dr. Denver's methodology is valid, he lacks qualifications to support his opinions as a professional whose background is in no way related to Plaintiff Steward's medical conditions. UniFirst avers that Dr. Denver's testimony is unprecise and unspecific because "Plaintiff Steward's treating physicians have not prescribed many, or even most, of the treatments upon which Dr. Denver has created his life care plan and its attendant costs." Doc. 83 at 2. More specifically, UniFirst notes that the diagnostic conditions for which Mr. Steward was treating, including, but not limited to, mild traumatic brain injury, concussion, brain hemorrhaging, epilepsy, vertigo, and post traumatic headache, are all outside of the scope of Dr. Denver's certifications. *See* Doc 83-1 (Dr. Denver acknowledged via deposition that he is neither board certified in neurology, neurosurgeon, ENT, brain injuries, or radiology nor had he spoken to any of Mr. Stewart's treating physicians). Thus, UniFirst avers Dr. Denver lacks the requisite knowledge, skill, experience, training, and education to form a reliable opinion concerning many of the diagnostic conditions found in his report. Doc. 83 at 4.

Finally, UniFirst argues that Dr. Denver's opinions are not relevant and reason that his testimony cannot be admitted because the subject matter does not require an expert since it would not aid the jury in revolving the issues of the case. *See, e.g.,* Doc 83-1 at 17 (Dr. Denver stating:

"anything about the future is speculation"). As UniFirst details, although he did meet with the plaintiff, Dr. Denver did not consider the plaintiff his patient nor did he independently diagnose or assess the plaintiff. Doc. 83 at 2. Moreover, UniFirst argues that because Dr. Denver (1) did not treat the plaintiff personally, (2) did not speak to any of the plaintiff's actual treating physicians, and (3) his report was a summation and "speculation" based on his interpretation of the medicals, Dr. Denver's testimony should be excluded from admission at trial. *See* Doc. 83 at 9-10.

When deciding whether to admit expert opinion, the Court must consider whether the expert opinions are "sufficiently tied to the facts of the case that it will aid the jury [or trier of fact] in resolving a factual dispute." *Daubert*, 509 U.S. at 591. "Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs., Ltd. v. Bd. of Trustees of Policemen & Firemen Retirement Sys. of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). Further, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citing 4 Weinstein's Federal Evidence § 702.03(2)(a)).

Here, the Court finds that Plaintiff met its burden under the first prong of *Daubert*, Dr. Denver is triple board-certified physician with a wealth of experience in testifying in negligence cases. Further, the Court finds UniFirst's argument against Dr. Denver's qualifications is a close call and would therefore err towards it going to the weight of evidence, which could be addressed during cross-examination and does not merit excluding his testimony on those grounds. However, the analysis does not end with qualifications.

A reliable opinion expressed by a genuinely qualified expert may not help the jury if it does not pertain to a fact at issue in the case. *Quiet Tech.* 326 F.3d 1333 at 1341. Faced with a proffer

of expert scientific testimony, the Court must determine whether the reasoning or methodology underlying the testimony is scientifically valid and or whether that reasoning or methodology properly can be applied to the facts in issue. *Curtis Inv. Co., LLC v. Comm'r*, 909 F.3d 1339, 1350 (11th Cir. 2018).

The Court agrees with UniFirst that Dr. Denver's proffered expert opinions in the present case are neither reliable nor would they aid the finder of fact in any way for several reasons. First, Dr. Denver acknowledged in deposition that his expert opinion is based upon his "taken in their opinions based on review of each of the physicians' documentation" (Doc. 83-1 at 2) and arriving at his own independent conclusion. Further, the Court finds Plaintiff has failed to show how Dr. Denver's opinion on the matter would aid the fact finders when Dr. Denver's opinion is based, at least in part, on evidence already admissible (Mr. Steward's medical records and treating physicians) and the fact finder is the party granted authority to form an opinion on the extent of Mr. Steward's injuries. Put simply, Dr. Denver's opinions are simply too speculative to form a reliable opinion in this case.

Second, according to Dr. Denver, he is not a treating physician but "an advocate for the life care plan and the methodology within the life care plan." Doc. 83-1 at 5 (deposition page 125). As previously detailed, Dr. Denver's opinions are supposedly based upon his review of the treating physician recommendations, yet Dr. Denver personally diagnosed Mr. Steward with vestibulopathy, occipital neuralgia, and positional vertigo, and his life care plan includes damages for future treatment of these illnesses. *See* Doc. 83-1 at 6, 8. Again, the Court finds Dr. Denver is likely qualified to diagnosis <u>a patient</u> with injuries such as Mr. Steward's; however, Dr. Denver himself stated that he was not a treating physician and Plaintiff is **<u>not</u> <u>his patient</u>**, and therefore he exceeded the appropriate scope for an opinion here and makes diagnosis without sufficient basis

as a non-treating physician. The Court finds that Dr. Denver's plan is unreliable as the report itself deviates from its stated purpose. *See* Doc. 83-1 at 17 (Dr. Denver stating "In this context, of a personal injury litigation, it would be damages in the context of future medical expenses."). He attempts to make unsupported conclusions based upon a cursory interview and diagnoses Plaintiff with conditions not made by his own treating physicians while also holding him at arms-length stating that he is not Plaintiff's treating physician nor is Plaintiff a patient. This renders his opinion unreliable and will not assist the fact-finder (and could even confuse issues).

Accordingly, the Court finds that Defendant Unfirst's motion to exclude Dr. Denver's testimony (Doc. 83) is **GRANTED**.

### III.   CONCLUSION

Based on the above, *Buc-ee's Alabama LLC's Motion in Limine to Exclude Testimony from Wayne Sanders* (Doc. 88, filed 05/22/23) is **DENIED** and *Defendant UniFirst's Motion to Exclude Testimony of Jack Denver* (Doc. 83) is **GRANTED**.

**DONE** and **ORDERED** this the 30th day of October 2023.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE