UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMY L. STEWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:20-cv-538-TFM-MU |
| | ) | |
| BUC-EE'S ALABAMA, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court are *Buc-ee's Alabama LLC's Motion for Summary Judgment* (Doc. 78, filed 5/4/23) and *Defendant UniFirst's Motion for Summary Judgment* (Doc. 81, filed 5/4/23). Each motion is accompanied by a brief in support and evidentiary submissions. *See* Docs. 76, 77, 79, 80, 82. Plaintiff timely filed his responses in opposition. *See* Docs. 90, 91, 92, 93. Having considered the motions, responses, replies, the evidentiary submissions in support of the motions, and the relevant law, the Court finds Buc-ee's Alabama LLC/s Motion for Summary Judgment (Doc. 78) is **GRANTED in part** and **DENIED in part**, and Defendant's UniFirst Corporation's Motion for Summary Judgment (Doc. 81) is **DENIED**, as discussed below.

### I.    PARTIES AND JURISDICTION

Jimmy L. Steward ("Plaintiff" or "Steward") is resident and domiciliary of Baldwin County, Alabama. Defendant Buc-ee's Alabama, LLC ("Buc-ee's")[1] is a Delaware limited liability company headquartered in Texas with the domicile/citizenship of all entities/persons considered for determining the citizenship in states other than Alabama. Defendant Unifirst Corporation

---

[1] The Court notes that designation of Buc-ee's is how the parties themselves refer to this defendant and that it is not intended to be a possessive when used throughout this opinion.

("Unifirst") is a foreign corporation formed and headquartered in the State of Massachusetts. The amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The parties do not contest jurisdiction or venue and the Court finds sufficient support exists for both.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

This claim for damages arises from a "Slip and Fall" that occurred on the premises of Buc-ee's on September 16, 2020, shortly after 12:00 p.m. in the afternoon. *See* Doc 91 at 1; *see also* Doc. 79 at 1. Following landfall of Hurricane Sally, during the morning hours of September 16, 2020, Plaintiff along with his wife and sisters, were in search of tarps to cover a family member's home. *See* Doc. 77-1 at 7 (Plaintiff's deposition at 56[2]). Buc-ee's, located at 20403 County Road 68, was the only store open to the public. Doc. 79 at 3; Doc 77-1 at 8 (Plaintiff deposition at 59).

Upon arrival at Buc-ee's, it was "misty" outside[3] (Doc. 77-1 at 9, Plaintiff's deposition at 66) and the main entrance of the premises was closed (*see* Doc 80-5 at 3 (deposition of Floyd Freeman "We had a lot of wind coming through the north and south, so our entrance facing the Beach Express had too much wind coming through. You couldn't keep the doors from flying open, so we had to close that entrance down due to those doors being inoperable"). Plaintiff entered the store through the side door, purchased sandwiches, left the store, moved his truck, and went back into the side entrance of the store. Doc. 77-1 at 9 (Plaintiff deposition at 66).

---

[2] When using page designations in reference to the depositions, the Court uses the page number in the top right corner of the deposition page. The general document citation (e.g. Doc. --) will refer to the PDF page number.

[3] The parties do not cite to official sources when detailing the weather conditions surrounding the incident in question, but rather just their own assessments of the weather conditions.

Steward, who was wearing a pair of Crocs, walked across a floor mat just inside the automatic sliding doors, and then fell shortly after stepping off the mat and onto the tile floor in the vestibule of the side entrance as he attempted to return inside of the store. *Id.* at 15-16 (Plaintiff deposition at 80-81). Plaintiff's fall caused him to slip backwards and hit his head on the floor. *Id.* Rita Steward (Plaintiff's wife) described the floor under her husband as "just damp, wet" immediately following his fall. *See* Doc 77-2 at 5 (deposition of Rita Steward at 27). An ambulance took Steward to Baldwin Regional Medical Center, but he was subsequently transferred to the University of South Alabama Hospital for monitoring of an intracranial hemorrhage. Doc. 80-2 at 8 (deposition of Rita Steward at 36).

At the time of the fall, Buc-ee's had a single mat at the side entrance to the store along with a yellow warning cone to the left of the entrance door on its tile flooring. *See* Doc. 77-5 (photographic stills of Plaintiff entering the premises). The interior floor mat[4] was manufactured by Defendant UniFirst; there were no mats placed on the exterior side of any entrance to Buc-ee's store. *Id.* In 2017, Buc-ee's and UniFirst entered into a five-year Master Purchasing Agreement ("MPA") whereby UniFirst would supply Buc-ee's store locations with certain products, including, but not limited to, floor mats, on a weekly basis. *See* Doc 80-14 (MPA).

Pursuant to the MPA's terms, UniFirst asserts that Buc-ee's "unilaterally and independently determined and selected the nature, style, performance characteristics, and scope of all Products to be used and the appropriateness of any such Products for Buc-ee's specific needs or intended uses." *Id.* For the Robertsdale store, UniFirst would "deliver these mats to a centralized location," (Doc. 80-3, Brunson deposition at 24) and Buc-ee's employees would "put out the mats

---

[4] The floor mat being used inside Buc-ee's vestibule appeared to be 3 feet by 5 feet (3' x 5'). (Doc. 80-3, Brunson, p. 27; Doc. 80-7, Sanders Vol. I, p. 292).

themselves at the doors." (Doc. 80-5, Freeman deposition at 71). In contrast, Buc-ee's claims they relied on Unifirst's expertise to tell them which mat sizes they needed. *See* Doc. 93-6 at 58 (deposition of Richard Sebastian at 56, stating "we rely on UniFirst as our resident expert…mats and supplies…we rely on them").

**B.      Procedural History**

Steward filed his original Complaint asserting four counts: (1) negligence, (2) recklessness and wantonness, (3) premises liability, and (4) negligent, reckless, and wanton supervision and training and seeking compensatory and punitive damages in the Circuit Court of Baldwin County, Alabama.  Essentially, he alleged the negligence of Buc-ee's in failing to keep and maintain its premises free and clear of a potentially hazardous and/or dangerous conditions and failing to train and supervise its employees led to Plaintiff being injured. *See* Doc. 1-1. The complaint was thereafter removed to this Court by Defendant Buc-ee's on November 10, 2020. Doc. 1. Buc-ee's answered on December 7, 2020, with general denials. Doc. 7.

Plaintiff filed an Amended Complaint, naming as additional Defendants UniFirst and Larry Levinson, on July 7, 2021. Doc. 28. UniFirst filed its Answer to the Amended Complaint on August 6, 2021. Doc. 30. Plaintiff then filed a "corrected" Plaintiff's Amended Complaint on August 9, 2021, re-alleging its complaints against Buc-ee's and further alleging that "Defendant UniFirst was responsible for providing adequate matting for Defendant Buc-ee's floors to provide the necessary safety required to Buc-ee's customers." Doc. 33 at 1-6. In addition, the amended complaint alleged negligence on the part of Lawrence "Larry" Levinson, as an agent of Buc-ee's with the authority to select, purchase, and install flooring at Buc-ee's Robertsdale, Alabama location, in failing to consider all applicable state and municipal building laws and regulations, by designing, selecting, purchasing, and installing unsafe floor. *Id.* at 18, 24. Therefore, the corrected

Amended Complaint asserts the original four counts against Buc-ee's for Negligence (Count I), Recklessness and Wantonness (Count II), Premises Liability (Count III), Negligent, Reckless, and Wanton Supervision and Training (Count IV) and adds a single claim against UniFirst for Negligence (Count V) and two claims against Levinson for Negligence (Count VI) and Professional Liability (Count VII).  Doc. 33.

Buc-ee's and Lawrence Levison timely answered the corrected amended complaint.  *See.* Doc. 36, 37. After a period of extensive discovery, Plaintiff filed a Joint Stipulation for Pro Tanto Dismissal of Lawrence Levison. Doc. 70. On March 13, 2023, the Court issued an order dismissing all claims against Defendant Levinson (whether under Rule 41(a)(1)(A)(ii) or under Rule 41(a)(2)) which eliminated Counts VI and VII.  Doc. 72. The case remained pending against Defendants Buc-ee's and UniFirst which left Counts I through V.

On May 4, 2023, Buc-ee's filed its Motion for Summary Judgment with supporting brief and evidentiary support which addresses Counts I through IV. Docs. 77, 78, 79. That same day, UniFirst filed its own Motion for Summary Judgment with supporting brief and evidentiary support which addresses Count V. Docs. 80, 81, 82. Plaintiff Steward filed Responses in Opposition to both motions on May 25, 2023. *See* Docs. 90, 91, 92, 93. On June 1, 2023, Buc-ee's and UniFirst filed their respective replies. Docs. 96, 97.

Thereinafter, Buc-ee's filed Motion in Limine to Exclude Testimony from Wayne Sanders (Doc. 88), and UniFirst filed a Motion to Exclude Testimony of Jack Denver (Doc. 83). After a review of all the written pleadings, motions, responses, replies, and the relevant law, the Court issued an order denying Buc-ee's Motion to Exclude Wayne Sanders and granting UniFirst's Motion to Exclude Jack Denver. Doc. 112.  In the instant matters, the Court considered and disregarded evidence as appropriate in accordance with the prior evidentiary rulings.

Finding the motions for summary judgment ripe for adjudication with no need for oral argument, the Court issues the following opinion.

### III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).   "[T]he substantive law will identify which facts are material." *Id*. at 248, 106 S. Ct. at 2510.   At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S. Ct. at 2511.   The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).   An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.   *Mize v. Jefferson City Bd. of Educ*., 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co*., 9 F.3d 913, 918 (11th Cir. 1993)).   For factual issues to be considered genuine, they must have a real basis in the record.   *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).   The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of

some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23, 106 S. Ct. at 2252. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). The court must view facts and draw all reasonable inferences in favor of the non-moving party. *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)). However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177,

3188, 111 L. Ed. 2d 695 (1990).

## IV.   DISCUSSION AND ANALYSIS

Before this Court are two interrelated motions for summary judgment. First, Defendant Buc-ee's moves this Court to grant summary judgement in its favor on all of Plaintiff's claims pending in this matter alleging there is no genuine issues of material fact and Buc-ee's is entitled to judgment as a matter of law. Second, Defendant Unifirst moves this Court to grant summary judgment in its favor on the grounds that UniFirst owed Plaintiff no legal duty and Plaintiff cannot demonstrate essential elements of his claims against UniFirst. The Court will discuss each motion in turn.

## A.    Buc-ee's Alabama, LLC's Motion for Summary Judgment (Doc. 78)

In *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938), the Supreme Court held that in diversity jurisdiction cases, like the present case, courts should apply state substantive law. 304 U.S. 64, 78, (1938). The Supreme Court elaborated on *Erie*, in *Hanna v. Plumer*, advising that "federal courts are to apply state substantive law and federal procedural law." 380 U.S. 460, 465-66 (1965).  Accordingly, Alabama's substantive law governs the interpretation of the case at hand.

### i.    Count I (Negligence) and Count III (Premises Liability)

Plaintiff alleges both negligence (Count I) and Premises Liability (Count III).  Under Alabama law, "[i]n [a] premises-liability case, the elements of negligence are the same as those in any tort litigation." *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000) (quotations and citation omitted).  Therefore, the Court will address the two claims together.

Therefore, "[t]o establish negligence in a premises-liability case under Alabama law, Plaintiffs must establish 'duty, breach of duty, cause in fact, proximate or legal cause, and

damages.'" *Giles v. Winn-Dixie Montgomery, LLC*, 574 F. App'x 892, 894 (11th Cir. 2014)[5] (quoting *Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000))

The amended complaint alleges Plaintiff suffered a fall due to unsafe floors, inadequate matting, and/or a combination of unsafe floors inadequate matting, other debris, and water after Buc-ee's negligently and/or recklessly failed to keep and maintain its premises to be free and clear of potentially hazardous conditions. Doc. 33 at 1-7, 9-13. Further, Plaintiff alleges Buc-ee's was caused or allowed a hazard to be placed or to remain in a regularly used area of travel in a location that was dangerous and likely to cause injury to its invitees such as Plaintiff. *Id.*. Finally, Plaintiff alleges that Buc-ee's failed to properly control the conditions, methods, and manner in which the floor was maintained and presented to the invitees, such as Steward, for their use in ambulating and/or traveling about the store. *Id.*

Under Alabama law, a customer entering a store is an invitee, and the storekeeper owes the customer a duty to exercise reasonable care to keep the premises in a reasonably safe condition. *Cox v. Western Supermarkets, Inc.,* 557 So. 2d 831 (Ala. 1989). "There is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d at 314. "[T]he storekeeper is not an insurer of the customer's safety", but rather is liable when he or she negligently fails to exercise reasonable care to maintain the premises in a reasonably safe condition free of foreign substances. *Cox*, 557 So. 2d at 832 (citing *Clayton v. Kroger Co.*, 455 So. 2d 844, 845 (Ala. 1984)).

More specifically, when the foreign substance is rainwater tracked in by customers and in

---

[5] In this Circuit "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 12264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

the absence of unusual accumulations, due care does not require that a storekeeper keep the floor completely free of water.   *Terrell v. Warehouse Groceries,* 364 So. 2d 675, 677 (Ala. 1978). Where there are unusual accumulations of rainwater or other circumstances, each case must be examined in light of the particular circumstances; due care may require that the storekeeper take affirmative measures such as mopping applying anti slip compounds or posting warnings. *Id.*

In *King v. Winn-Dixie of Montgomery, Inc.,* a slip and fall case involving a plaintiff who fell on rainwater just inside the defendant's grocery store, the store manager testified that it was store policy to mop the floors every 30 minutes if the weather was clear and "as needed" during inclement weather. 565 So. 2d 12 (Ala. 1990). The Court, relying on *Cox, supra*, reversed a summary judgment entered in favor of the grocery store, reasoning "because there was some evidence of an unusual accumulation of rainwater (Ms. King in her affidavit stated, 'I slipped and fell in a puddle of water on the floor . . . at the front entrance of the store'), there was a factual question as to whether the store should have taken more affirmative measures than it had taken before Ms. King fell." *King,* 565 So. 2d at 14. Thus, as a matter of law, the court could not rule that the defendant was not negligent in failing to discover the water and mop it up before the plaintiff fell; therefore, the resolution of the negligence claim involved factual questions that should be resolved by a fact finder. *Id.* at 13.

Similarly, in *Strahsburg v. Winn-Dixie Montgomery, Inc.*, Plaintiff, who was shopping in the store when he fell and injured his hand and arm, alleged negligence as it had been raining that day and water had been tracked into the store by people's shoes and shopping carts. 601 So. 2d 916, 918 (Ala. 1992). The Court held that when it is undisputed that rainwater is the nexus for injury, the focus is whether there is an unusual accumulation of rainwater or whether there were other circumstances that would have required affirmative measures by the store in the exercise of

due care. *Id.* at 919. In *Strahsburg*, although there was testimony from the store manager and the bagger that the floors were mopped as often as possible and that the warning signs were in place when Plaintiff fell, because plaintiff testified that there was "a lot of water" on the floor, the evidence when viewed in the light most favorable to the plaintiff presented a question of fact which precluded judgment as a matter of law for the defendant. *Id.*

Here, Buc-ee's argues it is entitled to summary judgement for several reasons. First, Buc-ee's argues it had no duty to keep its premises completely free of rainwater. Doc. 79 at 9. Second, Buc-ee's argues it had "no affirmative duty to take affirmative preventative measures due to the absence of water accumulation." *Id.* at 13. Finally, Buc-ee's argues that even if there was an unusual accumulation of water in the vestibule of the store, it was not negligent because it took affirmative measures to protect against the slippery conditions of placing a mat at the entrance, placing visible yellow signs in the vestibule warning the floor was wet, and dry mopping any moisture on the floor as often as necessary. *Id.*

While Buc-ee's is correct in its argument that it is not required to keep its premises completely free of rainwater, because it is undisputed that the substance on the floor the day of Plaintiff's fall was rainwater, the case turns on whether there was an unusual accumulation of rainwater or other circumstances that required a heightened duty of care by Buc-ee's. Here, the plaintiff's injury didn't occur on a "regular rainy day," as the fall took place shortly after Hurricane Sally made landfall. *See* Doc. 91-3 at 37 (Sebastian deposition at 35); *see also* Doc 80-5 at 3 (deposition of Floyd Freeman "We had a lot of wind coming through the north and south, so our entrance facing the Beach Express had too much wind coming through. You couldn't keep the doors from flying open, so we had to close that entrance down due to those doors being inoperable"). Plaintiff's wife testified that the floor was so wet that "I kneeled down and my knees

got wet." Doc. 77-2 at 6 (Rita Steward deposition at 33). Further, Buc-ee's experienced double the normal number of customers. *See* Doc. 91-3 at 9 (Sebastian deposition at 7).

Accordingly, in the present case, like *Strahsburg*, although there was testimony from employees and the store manager that floors were vacuumed up just prior to Mr. Stewart slipping, a Buc-ee's employee, Richard Sebastian, couldn't confirm the weather conditions at the time of Plaintiff's fall but noted at least "five or so" instances of "someone slipping and falling or tripping and falling" at the store prior to Plaintiff's fall. *Id*. at 50, 53 (Sebastian deposition at 48, 51). Further, Buc-ee's only had a single mat at the side entrance to the store along with a yellow warning cone to the left of the entrance door on its tile flooring and there were no mats placed on the exterior side of any entrance to Buc-ee's store at the time of Plaintiff's fall. *See* Doc. 77-5 (photographic stills of Plaintiff entering the premises). With the evidence viewed in light most favorable to the plaintiff, the Court rules that the conditions of the premises along with Buc-ee's alleged affirmative duty and any steps taken by Buc-ee's in fulfillment thereof are genuine questions of material fact. Therefore, the Court finds that motion for summary judgment must be denied on the issue of negligence and premises liability.

### ii.   Count IV (Negligent, Reckless, and Wanton Supervision and Training)

In Count IV, Plaintiff notes that he was an invitee of Buc-ee's and that it owed an obligation and duty to train and supervise its employees to properly inspect the accessible areas to ensure no dangerous conditions. *See* Doc. 33 at 14. Plaintiff then says that as a proximate and direct result of Buc-ee's failure to properly train and supervise the employees, Plaintiff was injured. *Id*. at 14-15.

> To support a claim of negligent supervision, the plaintiff must demonstrate that (1) the employee committed a tort recognized under Alabama law, *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824 (Ala. 1999), (2) the employer had actual notice of this conduct or would have gained such notice if it exercised "due

> and proper diligence," *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So.2d 665, 682
> (Ala. 2001), and (3) the employer failed to respond to this notice adequately. *Id*. "It
> is proper, when repeated acts of carelessness and incompetency of a certain
> character are shown on the part of the servant, to leave it to the jury to determine
> whether they would have come to the master's knowledge had the master exercised
> ordinary care." *Mardis v. Robbins Tire & Rubber Co.*, 669 So.2d 885, 889 (Ala.
> 1995).

*Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009); *see also Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1070-71 (Ala. 2003) (demonstrating that for both negligent and wanton supervision, a plaintiff must properly allege tortious conduct). "However, to sufficiently allege a claim of reckless or wanton training or supervision, plaintiffs must demonstrate that [defendant] had actual knowledge of an employee's tortious conduct—a higher bar than negligence's 'knew or should have known' standard." *Chuler v. Ingram & Assocs.*, 710 F. Supp.2d 1213, 1288 (quoting *Big B, Inc. v. Cottingham*, 634 So. 2d 999, 1004 (Ala. 1993) and distinguishing reckless and wanton training and supervision from negligent training and supervision).

Although Plaintiff alleges that Buc-ee's negligently and wantonly trained its employees to inspect the premises and maintain the store in a reasonably safe condition, aside from noting "Buc-ee's normally staffed fifty (50) to seventy (70) employees from 6 a.m. to 2 pm. On the day of [Steward's] fall, Buc-ee's only had forty-seven (47) to forty-nine (49) staff members present" (Doc. 91 at 3), Plaintiff fails to provide any substantive evidence that would allow it to meet its burden prima facie case for these claims. In fact, Plaintiff's response on summary judgment simply focuses on premises liability in general. Further, Plaintiff fails to present any disputing evidence which could infer actual knowledge of an employee's tortious conduct as opposed to the lower bar for negligence of "knew or should have known" standard. As such, the Court finds that the motion for summary judgment should be granted on Count IV.

### iii.      Counts II & III-Recklessness / Wantonness

Count II asserts a claim for recklessness and wantonness.  And, peppered throughout Count III and other areas of his complaint, Plaintiff repeatedly alleges the reckless and wanton actions of Buc-ee's led to his injury.  *See* Doc. 33.   Alabama does not have a cause of action called "recklessness" and courts typically place it under a claim for wantonness.  *See, e.g., Pickens v. Guys Logging Co.*, Civ. Act. No. 7:16-cv-1742, 2018 U.S. Dist. LEXIS 131925, at *13 n. 3, 2018 WL 3732686 (N.D. Ala. Aug. 6, 2018); *Birmingham Emergency Commc'ns Dist. v. TW Telecomm. Holdings*, Civ. Act. No, 2017 U.S. Dist. LEXIS 184971, at *5 n. 4, 2017 WL 11068541 (N.D. Ala. Mar. 2, 2017).  Therefore, the Court will consider them together here.

Alabama law defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." Ala. Code § 6-11-20(b)(3).  Implicit in wanton misconduct is an acting, with knowledge of danger, or with consciousness, that is, that the doing or not doing of some act will likely result in injury; wantonness cannot exist without a conscious or intentional act. *Ex parte Anderson*, 682 So. 2d 467, 469 (Ala. 1996).  As the Supreme Court of Alabama explained in Tolbert:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wantonness, willful, or reckless misconduct is an acting, without knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . Wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act . . .

*Tolbert v. Tolbert*, 903 So. 2d 103, 115 (Ala. 2004) (internal quotations and citations omitted). Additionally, in cases where recklessness and wantonness are both claimed, the resolution of such claims is handled under Alabama law as simply a claim for wantonness.  *Pickens v.*

"Wantonness is a question of fact for the jury, unless there is a total lack of substantial

evidence from which a jury could reasonably infer wantonness." *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992). To survive summary judgment on a wantonness claim, a plaintiff must provide substantial evidence creating a genuine issue of material fact that a defendant acted with reckless or conscious disregard to the rights or safety of others in their actions or inactions.

Here, Plaintiff's brief in opposition to Buc-ee's Motion for Summary Judgement does not mention of wanton behavior on behalf of Buc-ee's. *See* Doc. 91.  Moreover, aside from the mentioning wantonness in his complaint, Plaintiff has failed to offer substantive evidence of wanton behavior on the part of Buc-ee's.  Evidence that an accident occurred without evidence that the defendant or its agent was conscious of the plaintiff's injury or potential injury is insufficient to prove wantonness under Alabama law. Katrensky v. United States, 732 F. Supp 2d 1194 (M.D. Ala. 2010).

In sum, the Court finds that "there is a total lack of evidence from which the jury could reasonably infer wantonness." *See McDougle v. Shaddrix*, 534 So. 2d 228, 231 (Ala. 1988). Therefore, summary judgment is granted on all claims of recklessness and wantonness (regardless of the count in which it is referenced).

## B.    UniFirst's Motion for Summary Judgement (Doc. 81)

Unifirst alleges it is entitled to summary judgment because Plaintiff "testified that he does not even know why he sued UniFirst,"[6] and "no one (not Steward, his wife, or any of his numerous retained expert witness) have testified that the mat provided by UniFirst to Buc-ee's was unsafe, was defective, or was otherwise unsuitable for its intended purpose." Doc. 81 at 2-3. Therefore, according to UniFirst, Plaintiff cannot prove the essential elements of his claims against UniFirst, warranting entry of a judgment in UniFirst's favor.

---

[6] UniFirst fails to provide a citation to the alleged testimony of Plaintiff.

In support of its argument, UniFirst cites to *Ex parte Atmore Community Hosp.,* 719 So. 2d 1190 (Ala. 1998). In *Atmore,* the court granted in part the defendant hospital's motion for summary judgment noting that the hospital met its burden by making a prima facie showing that it was not liable to the Plaintiff employee and upon showing, the employee failed to present substantial evidence on which the hospital could be held liable. 719 So. 2d at 1192.

In the instant case, UniFirst highlights several reasons as to why it owed no duty to the Plaintiff. First, UniFirst notes that the MPA between Buc-ee's and UniFirst explicitly states that Buc-ee's –not UniFirst – determined the "appropriateness" of the mat for "Buc-ee's specific needs or intended uses." Doc. 80-14 (MPA). Next, UniFirst argues that "UniFirst had no way of knowing what the condition of Buc-ee's premises would be when Steward visited, or what Buc-ee's would do to maintain its premises during periods of inclement weather." Doc. 82 at 17. Assuming without deciding that UniFirst satisfactorily makes a prima facie showing that it was not liable to the plaintiff, as such, the burden then would shift to Plaintiff to provide evidence as to UniFirst's liability where the Court finds that summary judgment is not appropriate.

UniFirst alleges that Plaintiff's theories of liability cannot be supported because Plaintiff provided no evidence to support its theories of liability against UniFirst. This argument fails as Plaintiff offered the testimony of Wayne Sanders' who opined the only mat used inside the vestibule was undersized and did not provide adequate protection for customers entering the store. Doc. 93-3 (Sanders' deposition at 120-125, 171-176, 294-296). Sanders was retained by Plaintiff to give his expert opinions related to commercial industry standards for premises safety as it pertains to the flooring and mats at the store in which Plaintiff fell. Doc. 101 at 1. Further Plaintiff offered testimony of Buc-ee's employee who stated Buc-ee's relied on Unifirst's expertise to tell them which mat sizes and what type of mats they needed. Doc 93-6 at 30 (Sebastian Deposition at

28: "we rely on--in this case UniFirst is the expert. So we rely on them to, uhm, provide the proper size and any other guidance that we would rely on). Thus, although UniFirst may have offered evidence to show why it owed plaintiff no duty, Plaintiff has provided substantive evidence to the contrary which the Court cannot resolve here.  In fact, it would appear that the majority of the arguments made by UniFirst seem to pertain to whether Buc-ee's may owe a duty of defense or indemnification against claims against UniFirst.  Yet, that is not the question before the Court on the motion for summary judgment nor should the Court resolve the factual discrepancy as to which company is responsible for the sizing of the mats when it comes to Plaintiff's claims.

Accordingly, UniFirst's Motion for Summary Judgment is denied.

## V.   CONCLUSION

Based on the foregoing discussion and analysis, it is **ORDERED** as follows:

(1)     *Buc-ee's Alabama LLC's Motion for Summary Judgment* (Doc. 78) is **GRANTED in part** and **DENIED in part**.

    a.   The motion is granted as to Counts II and IV in their entirety.

    b.   The motion is also granted as to Count III for recklessness and wantonness and any other references for recklessness and wantonness claims.

    c.   The motion is denied as to Counts I and III as to negligence and premises liability.

(2)     *Defendant UniFirst Corporation's Motion to Summary Judgment* (Doc. 81) is **DENIED**.

Therefore, the surviving claims for trial are Count I (negligence against Buc-ee's), Count III (premises liability negligence against Buc-ee's) and Count V (negligence against UniFirst).

**DONE** and **ORDERED** this the 9th day of November 2023.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE