IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMY L. STEWARD | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 1:20-cv-00538-TFM-MU |
| | * | |
| BUC-EE'S ALABAMA, LLC, et al. | * | |
| | * | |
| Defendants | * | |

**BUC-EE'S ALABAMA, LLC'S MOTION TO RECONSIDER
AND SUPPORTING BRIEF**

Comes now Defendant Buc-ee's Alabama, LLC ("Buc-ee's"), pursuant to Federal Rule of Civil Procedure 54(b), and moves this Honorable Court to reconsider its Memorandum Opinion and Order [Doc. 119] which granted Buc-ee's Motion for Summary Judgment in part and denied it in part as to the Plaintiff's claims of negligence and premise liability.

Pursuant to S.D. Ala. Civ. LR 7(b), Buc-ee's submits the following brief in support of its Motion.

**I.     Introduction**

Buc-ee respectfully submits that this Motion to Reconsider is necessary to correct clear errors of law and fact concerning the Court's ruling regarding

#101797762v1

negligence, premise liability, unusual accumulation of rainwater, and the defenses of open and obvious which incorporates contributory negligence and assumption of risk.

## II.   ARGUMENT

### A.   Reconsideration Standard.

Federal Rule of Civil Procedure 54(b) allows the Court to revise its interlocutory orders at any time prior to final judgment. Specifically, the rule states "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Further, the "grant or denial of a motion to reconsider is left to the discretion of the trial court." In re Taira Lynn Ltd. No. 7, 2015 U.S. Dist. LEXIS 19547 (S.D. Ala. Feb. 18, 2015). A motion to reconsider generally is only available where there is newly discovered evidence, an intervening change in controlling law, or to correct manifest errors of law or fact." United States v. Marion, 562 F.3d 1330, 1335 (11th. Cir. 2009).

Buc-ee's submits that the third ground exists here. Namely, the Court's ruling mistakenly interpreted the facts and the law regarding negligence/premise liability claims and the defenses thereto. Buc-ee's does not seek a second bite at the apple by filing this motion. American Home Assur. Co. v. Glenn Estess & Associates Inc.,

2

763 F.3d 1237, 1239 (11th Cir. 1985). Rather, the Court can prevent a manifest injustice by revisiting its ruling.

  B. Buc-ee's respectfully submits and takes issue with the Court's numerous factual findings in various portions of the Memorandum Opinion and Order ("Order"). Buc-ee's will herein below address the misstatements of fact, omission of pertinent facts and the omission of pertinent undisputed facts.

### III. Misstatement and Omission of Pertinent Facts

  A. In the Order , PageID# 4525, the Court states "at the time of the fall, Buc'ee's had a single mat at the side entrance of the store along with a yellow cone to the left of the entrance door on its tile floor. *See* Doc 77-5." The Court's Order completely failed to state that there were "four" yellow caution/warning cones in the lobby of the side entrance of the store. Three of the yellow caution cones are identified in Doc. 77-5 and the fourth yellow caution cone was testified to by Buc-ee's assistant manager, Melissa Stevens. One of the yellow warning/caution cones was in plain view right in front of where the Plaintiff fell.

  Attached hereto as Exhibit 1 is a copy of Doc. 77-5 for the Court's convenience with circles around the three yellow caution cones, two circles around the yellow caution/warning cone right in front of Mr. Stewart where he fell. Also, it is undisputed that there were four (4) yellow caution/warning cones in the lobby. Melissa Stevens testimony is as follows:

3

#101797762v1

> Q: Do you know if the cones were down when Mr. Steward fell?
>
> A: They were. We actually had four.[1]

Melissa Stevens Depo. Pp. 49-53; PageID# 1127-1131.

    B.    The Court's Order is also void of any mention of the undisputed facts that Neal Middlecoat continuously monitored the vestibule to make sure there was no unusual accumulation of water by running a Swingo machine and dry mopping the floor. (Neal Middlecoat Dep. p. 16-22; PageId. 1135-1141; Floyd Freeman Depo. P. 53, PageId.1148). The Court also failed to include the undisputed fact that Neal Middlecoat just prior to Steward slipping had run the Swingo in the lobby to vacuum up any rainwater moisture and dry mop the floor to clean up any moisture. (Neal Middlecoat Depo. pp. 16-22, P. Id. 1135-1141).

    C. Richard Sebastian Testimony

Buc-ee's respectfully submits that the Court misrepresented the testimony of Richard Sebastian when it stated, "Richard Sebastian couldn't confirm the weather conditions at the time of the Plaintiff's fall but noted at least "five or so" instances of "someone slipping and falling or tripping and falling" at the store prior to Plaintiff's fall." *Id*. At 50, 53 (Sebastian deposition at 48, 51). (Doc. 119, PageID#4534). For

---

[1] The video and the photographs confirm there were four yellow warning cones in the lobby and one clearly in front of Mr. Steward where he fell.

the Court's convenience Buc-ee's has submitted Richard Sebastian's deposition hereinbelow:

Q. Have you been designated as Buc-ee's representative in any other lawsuits:

A. Yes.

Q. How many?

A. Ten to twelve, the number of depositions I have or have given.

Q. Do you recall giving a deposition in the first year of working there?

A. Not that I can remember.

Q. Ok. So it would be in the last three years you've been designated 10 times as a corporate representative?

A. That's probably correct.

Q. Any other litigation in the State of Alabama?

A. No

Richard Sebastian Depo. p. 26

*  *  *

Q. Ok. How many total stores does Buc-ee's have?

A. Forty-two

Richard Sebastian April 6, 2021, Depo. p. 20. (Attached hereto as Exhibit 2).

Q: … Hmm, how many of them had to do with slipping and falling or tripping and falling?

A: Ahh hmm probably five or so I don't have the exact answer for you.

Q. And those – and that litigation, do you remember talking about the tile in these stores?

Richard Sebastian Depo. pp. 48 51; PageID#4534 .

The Court incredulously misinterpreted Richard Sebastian's deposition testimony to give the illusion that there were slip and falls at this store prior to this event. That illusion has no basis in reality. The undisputed facts are that there were 42 Buc-ee's stores throughout the Southeast. Mr. Sebastian testified as corporate representative for maybe five slip and fall cases. <u>None in Alabama</u>.[2]

### D. Unusual Accumulation of Water

The Court not only misstates the facts of the amount of water on the floor it creates new ones. The testimony by the Plaintiff's wife, Rita Steward:

Q. What was the condition of the floor in the vestibule when you got there?

A. It was just damp, wet…

Q. What was the floor like at the time.

---

[2] Buc-ee's did not address this testimony in its summary judgment because the Plaintiff did not raise it.

6

#101797762v1

    A.    It was damp. I kneeled down and my knees got wet.

Rita Steward Depo pp 27, 33; PageID#1121, 1122

    This Court changed Rita Steward's testimony by adding the word "so" in front of wet to create an illusion that the floor was more than just damp/wet as Ms. Steward described. The Court's Order reads "Plaintiff's wife testified that the floor was "so" wet that I kneeled down and my knees got wet."  PageID#4533-4534[3]. The Court's misstatement of facts and "creation" of new facts is disturbing. This misstatement and "creation" of facts cause the Court to misapply the law.

    Alabama courts have held that an "unusual accumulation" exists when there is water in an unexpected location. *Boyd v. Walmart Stores, Inc*., 710 So.2d1258, 1260 (Ala. Civ. App. 1997)(focusing on "around the service desk"). That the water was at the doorway is where one would expect the floor to be wet on a rainy day. *Boyd*, 710 So. 2d at 1264.  *See also Elrod v. Dolgencorp, LLC*. 711 F. App'x 581, 585 (11th Cir. 2017).

    According to Black's Law Dictionary, 5th Edition "unusual" means uncommon; not usual, rare. It is not uncommon or rare for the floor inside a store to be damp/wet on a rainy day, it is expected!. Interpreting damp/wet floors as described by Ms. Steward at the entrance to a store on a rain day to mean there was

---

[3] Ms. Steward's knees could easily have gotten wet from kneeling on a damp/wet floor. Just like sitting on a damp cushion, your pants get wet.

an "unusual accumulation" of water on the floor defies logic, is not based on reality, and is wrong. Ms. Steward's knees would have gotten wet from kneeling on a damp/wet floor. The facts taken in the light most favorable to the Plaintiff demonstrate the floor was damp/wet in an area one would expect water on a rainy day i.e., no unusual accumulation.

## IV. The Court Mistakenly Applies the Facts to the Law

A.   The Court mistakenly relies on *King v. Winn-Dixie of Montgomery, Inc.,* 565 So.2d 12 (Ala. 1990) ,wherein the Plaintiff alleges she slipped and fell in a "puddle of water" on the floor. Likewise, the Court mistakenly relies on *Strahsburg v. Winn-Dixie Montgomery, Inc.*, 601 So. 2d 916 (Ala. 1992) wherein the Plaintiff testified that there was "a lot of water" on the floor. Rita Steward said the floor was damp/wet. There is no evidence that there was a "puddle" or "lots of water" on the floor and overwhelming undisputed evidenced there was no "unusual accumulation" of water.

Buc-ee's argument in their Brief in Support of Summary Judgment (Doc. 79 PageID# 1167-117, PageID# 1161-1163)[4] addresses address the "no" unusual accumulation of water facts. If the Court had applied the true facts to the law Buc-ee's would have been granted summary judgment on all claims. In *Walmart Stores*

---

[4] Just Prior to Steward's fall, Neil Middlecoat had just run the Swingo in the lobby to vacuum up any rainwater moisture and dry mopped the floor to clean up any moisture.

8

*Inc. v. White,* 472 So. 2d 614 (Ala. 1985), case the court held that where the evidence showed only that the floor was just wet enough to be "slick" this was not sufficient evidence to create a genuine issue about an unusual accumulation even though the evidence indicated that the Plaintiff's clothes were wet when she got home.

Likewise, in *Katrensky v. United States*, 792 F. Supp 2d 1194 (M.D. Ala. 2010), the Plaintiff's testimony that before she fell, she did not see anything, including water on the floor, but after the fall her pants were "wet." The Court held that the evidence which was submitted by the Plaintiff's does not create a genuine issue about the existence of an unusual accumulation of water.

The only evidence before this Court was that the floor was damp/wet. When the Court applies the true facts "damp/wet" to the established case law there is not enough to create a genuine issue of fact as to unusual accumulation. Thus, Buc-ee's summary judgment motion should have been granted on the negligence/premise liability claims.

B.   The Court misapplied the undisputed facts to the law as to the duty owed by Buc-ee's set forth in its motion for summary judgment. (Doc. 79; PageID# 1166-1171). The law on store owner's duty on rainy days is that if there is an "unusual accumulation" a store owner has to (1) take steps to correct the condition <u>or</u> (2) warn about the conditions. *Terrell v. Warehouse Groceries,* 364 So. 2d 675,

9

677 (Ala. 1978). Assuming *arguendo* that there was testimony of a "puddle" or "lots of water" which there was not, there is no dispute that there were three (3) yellow caution/warning cones seen in Doc. 77-5. The yellow caution/warning cones warned the Plaintiff of any slippery condition. Thus, based on undisputed evidence Buc-ee's warned about the condition which according to Alabama law is a complete defense. (*See also* APJL 31.03 attached hereto as Exhibit ____). Additionally, it is undisputed that Buc-ee's ran a Swingo (shop vac type machine with a squeegee) and a dry mop to correct any situation if it existed.

"In addition to the safety precautions of the yellow warning cones in the vestibule and the mat at the entrance to the store, Buc-ee's implemented additional safety procedures to keep customers safe. They used the Swingo shop vac type machine with a squeegee to vacuum up any moisture on the floor, dry mop the floor to pick up any moisture and assigned a safety/maintenance employee, Neil Middlecoat, to work full time in the vestibule to keep it safe for its customers. (Floyd Freeman Depo. p. 53, PageID#1148; Neil Middlecoat Depo. pp. 16-22; PageID#1135-1141) (Doc. 79, PageID# 1162)).

There are a plethora of cases wherein just putting out a mat and warning signs is enough to warn a customer. *Katrensky v. United States,* 732 F. Supp. 1194 (M.D. Ala. 210)(Noting that placing rubber mats at the entrance way constitutes an affirmative measure; *see also Garrett v. Walgreens,* 213 U.S. Dist. Lexis 95 934

10

#101797762v1

(N.D. Ala. 2013)(granting summary judgment when storeowner put down rubber mats and warning signs near the door.)   Buc-ee's went over and above what the court required  *Katrensky* and *Garrett, supra*.

There was no unusual accumulation of water. If there was, it is undisputed that measures were taken to warn this Plaintiff, and corrective measures were also taken. Thus, it cannot become a question for the jury.

C. The Court completely ignored Buc-ee's open and obvious, assumption of risk/contributory negligence defenses. The facts are undisputed the Plaintiff knew the floor was set/slippery. The facts as testified to by the Plaintiff are as follows:

Q. My question was that you understand that if things get wet, they can get slippery?

A. I understand they can, yes.

Jimmy Steward Depo. p. 14, PageID#1102.

Q. Let's talk about the first time you went into Buc-ee's was it raining at that time.

A. Misty.

Q. Misty, so it was wet outside?

A. It was wet.

Jimmy Steward Depo. p. 66, PageID#1108.

> Q. So you knew the floor was wet when you walked in the first time?
>
> A. Yeah, I'm sure I did.

Jimmy Steward Depo. p. 70, PageID#1109.

> Q. So you understood there could be water on the floor?
>
> A. I understood it.

Jimmy Steward Depo. pp. 72-73, PageID#1110-1111.

> Q. So it is your position that you have no responsibility for your own safety?
>
> A. I was careful as I could be. I don't run, I don't slip and slide trying to get into the building, . . . I had my Crocs on, they were brand new and good for in the water. . .

Jimmy Steward Depo. p. 78,88, PageID#1111, 1114

> A. My motto is safety first. But I walked into the building with every intention to walking slowly, walking because it was raining. . .I walked as safely as I could.

Jimmy Steward Depo. p. 81; PageID# 1115.

HOW CAN IT GET ANY MORE OPEN AND OBVIOUS? Mr. Steward admitted he knew the floor was damp/wet, and slippery!!

Buc-ee's motion for summary judgment sets forth numerous cases to support the open and obvious defense. In *Katrensky*, 732 F.Supp.2d at 1202. (plaintiff knew

12

#101797762v1

her feet were wet, she had to be careful entering the store and dragged her feet over the mat; the Court held as a <u>matter of law</u> she appreciated the danger as she walked into the store). (Doc. 79, PageID# 1175, 1176). *See also Boyd v. Sears Roebuck & Co.,* 642 So. 2d 949, 950 (Ala. 1994)(plaintiff's admission that she attempted to avoid oil spot is evidence as a matter of law, she appreciated the danger caused by the oil spill.) *Ex parte Neese,* 819 So. 2d 584, 590 (Ala, 2001)(location of door mat coupled with being wet from rain was open and obvious to the plaintiff). The Court simply did not apply undisputed facts to the law. If it did, it would find Buc-ee's was entitled to summary judgment on the "open and obvious" defense.

**IV.   Summary**

No reasonable jury could find that there was an "unusual accumulation" based on the testimony of Rita Steward. However, if they did, no reasonable jury could find that Buc-ee's four (4) yellow caution/warning cones did not warn the Plaintiff that the floor was damp/wet/slippery. No reasonable jury could find that Plaintiff did not know the floor was damp/wet/slippery. He admitted he did! No reasonable jury could find that Buc-ee's did not take affirmative action by dry mopping, running a Swingo, putting a mat out and warning the Plaintiff by putting out four (4) yellow caution/warning cones.

13

## V. Conclusion

Buc-ee's acknowledged that a motion to reconsider interlocutory orders is an extraordinary remedy that is used sparingly, however, such a remedy is necessary here to avoid the manifest injustice to Buc-ee's and to put additional burdens on businesses over and above what the Alabama Supreme Court has determined that they need to do on rainy days. Buc-ee's respectfully asks this Court to reconsider its Order and to grant its motion for summary judgment on the claims of negligence and premise liability.

                                         Respectfully submitted,

                                         */s/ James Rebarchak*
                                         JAMES REBARCHAK
                                         CLAY LANHAM
                                         Attorneys for Defendant
                                         Buc-ee's Alabama, LLC

OF COUNSEL:
JONES WALKER LLP
11 N Water Street, Suite 1200
Mobile, AL 36602
(251) – 432-1414
(251) – 433-4106
jrebarchak@joneswalker.com

# **CERTIFICATE OF SERVICE**

      I hereby certify that on November 13, 2023, I electronically filed the foregoing with the Clerk of Court, using the CM/ECF and served on the following via United States mail, first class, postage paid and/or via electronic mail:

Brian A. Traywick
Shunnarah Injury Lawyers, PC
3626 Claimont Avenue
Birmingham, AL  35222
btraywick@asilpc.com

Robert C. Epperson
P.O. Box 477
Foley, AL  36536
repperson@rcelaw.com

Richard Warren Kinney, III
Porter & Hassinger, PC
880 Montclair Road, Suite 175
Birmingham, AL  35213
wkinney@pphlaw.net

                                                */s/ James Rebarchak*_____
                                                JAMES REBARCHAK